UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

WILLIE MCNEAL IV

CASE NO. 8:19 cr 146 T 35 AEP

18 U.S.C. § 371
18 U.S.C. § 1320a-7b(b)(1)(B)

**INDICTMENT**

The Grand Jury charges that:

**COUNT ONE**
(Conspiracy—18 U.S.C. § 371)

**A.   Introduction**

At all times material to this Indictment:

The Medicare Program

1. The Medicare program ("Medicare") was a federal health care program that provided medical benefits, items, and services (collectively "items and services") to beneficiaries:

   a.   age 65 or older,

   b.   under age 65 with certain disabilities, and

   c.   of all ages with end-stage renal disease (permanent kidney failure requiring dialysis or a kidney transplant).

2. The Centers for Medicare and Medicaid Services ("CMS") was an agency of the U.S. Department of Health and Human Services ("DHHS"), and was the federal governmental body responsible for the administration of Medicare.

3. Medicare included coverage under component parts. Medicare Part A was a hospital insurance program that covered beneficiaries for, among other types of care, inpatient care in hospitals and other facilities. Medicare Part B was a supplemental medical insurance program that covered doctors' services, outpatient care, and some other medical items and services not covered under Part A.

Durable Medical Equipment

4. Durable medical equipment ("DME") was reusable medical equipment such as orthotic devices, walkers, canes, or hospital beds. Orthotic devices were a type of DME that included knee braces, back braces, shoulder braces, and wrist braces (collectively, "braces").

5. DME companies, physicians, and other health care providers that furnished items and services to Medicare beneficiaries were referred to as Medicare providers. To participate in Medicare, providers were required to submit an application in which the providers agreed to comply with all Medicare-related laws, rules, and regulations. If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number." A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for medically necessary items and services rendered to beneficiaries. Medicare providers were given access to Medicare manuals and service bulletins describing billing procedures, rules, and regulations.

6. Medicare reimbursed DME providers and other health care providers for medically necessary items and services rendered to beneficiaries. To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare, either directly or through a billing company.

7. A Medicare claim for DME reimbursement was required to set forth, among other information, the individual Medicare beneficiary's name and unique Medicare identification number, the equipment provided to the beneficiary, the date the equipment was provided, the cost of the equipment, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

8. Medicare would pay a claim for the provision of DME only if the equipment was medically necessary and reasonable, ordered by a licensed provider, and actually provided to the beneficiary. Medicare claims were required to be properly documented in accordance with Medicare rules and regulations. Medicare would not reimburse providers for claims that were procured through the payment of kickbacks and bribes.

Telemedicine

9. Telemedicine was a means of connecting patients to health care providers by using telecommunication technology, such as the internet or the telephone.

10. Telemedicine companies hired physicians and other health care providers to furnish telemedicine services to individuals. Telemedicine companies typically paid health care providers a fee to conduct consultations with patients. In order to generate revenue, telemedicine companies typically either billed the Medicare program or other health insurance program, or offered a membership program to patients.

11. Some telemedicine companies offered membership programs to patients who signed a contract for telemedicine services, paid a set dollar amount per month, and paid a fee each time the patient had a telemedicine encounter with one of its providers.

12. Medicare Part B covered expenses for specified telehealth services if certain requirements were met. These requirements included, among others: (a) that the beneficiary was located in a rural area (outside a Metropolitan Statistical Area or in a rural health professional shortage area); (b) that the services were delivered via an interactive audio and video telecommunications system; and (c) that the beneficiary was at a practitioner's office or a specified medical facility–not at a beneficiary's home–during the telehealth service furnished by a remote practitioner.

<u>Individuals and Related Entities</u>

13. Willie McNeal IV was a resident of Pasco County in the Middle District of Florida and was the owner, president, founder, chief executive officer, and

registered agent of WebDoctors Plus, Inc. ("WebDoctors") and Integrated Support Plus, Inc. ("Integrated") (collectively, the "Integrated Support Network").

14. WebDoctors was a purported telemedicine company located in Hernando County in the Middle District of Florida.

15. Integrated was a purported telemedicine company located in Hernando County in the Middle District of Florida.

16. "Employee 1," a person known to the grand jury, was a resident of Hernando County in the Middle District of Florida and an employee of WebDoctors and Integrated. Employee 1 provided administrative support for the Integrated Support Network.

17. "Doctor 1," a person known to the grand jury, was a resident of Toms River, New Jersey who worked as an independent contractor for Integrated.

### B. The Agreement

18. From in or around June 2017, through and including the date of this Indictment, in the Middle District of Florida, and elsewhere, the defendant,

**WILLIE MCNEAL IV,**

did knowingly and willfully combine, conspire, confederate, and agree together and with other persons known and unknown to the grand jury, including Employee 1 and Doctor 1, to:

    a.    defraud the United States out of money and property and by impeding, impairing, obstructing, and defeating the lawful functions of the DHHS, through its agency the CMS in the

administration of Medicare Part B, by deceit, craft, and trickery; and

    b.    commit the following offenses against the United States:

        i.    soliciting and receiving remuneration, in violation of 42 U.S.C. § 1320a-7b(b)(1); and

        ii.    offering and paying remuneration, in violation of 42 U.S.C. § 1320a-7b(b)(2).

### C. **Manner and Means**

19. The manner and means by which the defendant and his coconspirators sought to accomplish the objects of the conspiracy included, among others, the following:

    a.    It was part of the conspiracy that Willie McNeal IV would and did create and control the Integrated Support Network.

    b.    It was further part of the conspiracy that Willie McNeal IV, through the Integrated Support Network, would and did recruit and hire health care providers, including Doctor 1, to order, or prescribe, braces for Medicare beneficiaries.

    c.    It was further part of the conspiracy that Willie McNeal IV and others in the Integrated Support Network, including Employee 1, would and did solicit and receive payments in the form of illegal kickbacks and bribes in exchange for ordering, arranging for, and recommending the ordering of braces for Medicare beneficiaries.

d.  It was further part of the conspiracy that Willie McNeal IV and others in the Integrated Support Network would and did receive Medicare beneficiary information that was transmitted from telemarketers, recruiters, and others in order for the Integrated Support Network medical providers, including Doctor 1, to sign DME orders.

e.  It was further part of the conspiracy that Willie McNeal IV, through the Integrated Support Network, would and did pay health care providers, including Doctor 1, for ordering, or prescribing, braces for Medicare beneficiaries, often without any physical examinations or direct communication with the beneficiaries and regardless of medical necessity.

f.  It was further part of the conspiracy that Willie McNeal IV and others would and did refrain from charging a fee to Medicare beneficiaries or billing Medicare for telemedicine consultations conducted by the Integrated Support Network health care providers.

g.  It was further part of the conspiracy that Willie McNeal IV or others at the Integrated Support Network would and did transfer orders, or prescriptions, for braces for Medicare beneficiaries to telemarketers, recruiters, and others in exchange for payments in the form of kickbacks and bribes, understanding that the orders would be used to support false and fraudulent Medicare claims.

h.  It was further part of the conspiracy that Willie McNeal IV and others would and did disguise and conceal the nature and source of the kickbacks and

bribes by, among other conduct, entering into sham contracts, identifying the payments as "marketing" or "business process outsourcing" expenditures, and creating and maintaining fraudulent invoices.

    i.  It was further part of the conspiracy that Willie McNeal IV and others, through the Integrated Support Network, would and did facilitate the submission of false and fraudulent claims to Medicare totaling approximately $246 million for braces that were ineligible for Medicare reimbursement because they were procured through the payment of illegal kickbacks and bribes, medically unnecessary, and/or not provided as represented.

    j.  It was further part of the conspiracy that conspirators would and did participate in meetings, perform various acts, and make statements to accomplish the objects of the conspiracy and to conceal the conspiracy.

### D. Overt Acts

20. The conspirators committed various overt acts in furtherance of the conspiracy, and to effect the objects thereof, in the Middle District of Florida and elsewhere. For example, on or about the dates set forth below, each of which constitutes a separate overt act, Willie McNeal IV caused the transmission of a false

and fraudulent invoice to a telemarketing company in order to obtain payments in the form of illegal kickbacks or bribes:

| Overt Act | Approximate Date | Approximate Invoice Amount |
|---|---|---|
| a. | July 5, 2017 | $7,500 |
| b. | September 6, 2018 | $220,000 |
| c. | March 18, 2019 | $78,000 |
| d. | March 18, 2019 | $308,000 |

All in violation of 18 U.S.C. § 371.

## COUNTS TWO THROUGH FIVE
(Soliciting and Receiving of Health Care Kickbacks—42 U.S.C. 1320a-7b(b)(1)(B))

1. The Grand Jury hereby realleges Paragraphs 1 through 17 and 19 of Count One of this Indictment and incorporates such paragraphs as though fully set forth herein.

2. On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

**WILLIE MCNEAL IV,**

did knowingly and willfully solicit and receive remuneration (including kickbacks and bribes) directly and indirectly, overtly and covertly, in cash and in kind, in return for ordering, and arranging for and recommending ordering any service and item for which payment may be made in whole and in part under a Federal health care

9

program, to wit: kickbacks and bribes solicited and received in the approximate amounts listed below in exchange for furnishing signed DME brace orders to be used as support for Medicare claims:

| Count | Approximate Date | Approximate Amount |
|---|---|---|
| TWO | July 6, 2017 | $7,500 |
| THREE | September 6, 2018 | $220,000 |
| FOUR | March 18, 2019 | $78,000 |
| FIVE | March 18, 2019 | $308,000 |

All in violation of 42 U.S.C. § 1320a-7b(b)(1)(B) and 18 U.S.C. § 2.

## FORFEITURE

1. The allegations contained in Counts One through Five are re-alleged and incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 982(a)(7).

2. Upon conviction of a federal health care offense, including a violation of 42 U.S.C. § 1320a-7b(b), or conspiracy to commit such an offense, as alleged in Counts One through Five, the defendant,

**WILLIE MCNEAL IV,**

shall forfeit to the United States of America, pursuant to 18 U.S.C. § 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation.

3. The property to be forfeited includes, but is not limited to, the following:

   a. An order of forfeiture in the amount of the proceeds obtained from the kickback offenses;

   b. The real property located at 18116 Winding Oaks Blvd, Hudson, FL 34667;

   c. The real property located at 18130 Winding Oaks Blvd, Hudson, FL 34667;

   d. The real property located at 18140 Winding Oaks Blvd, Hudson, FL 34667;

   e. The real property located at 5262 Applegate Drive, Unit 101, Spring Hill, FL 34608;

   f. The real property located at 5258 Applegate Drive, Unit 102, Spring Hill, FL 34608;

    g. The real property located at 18029 Oggie Lane, Hudson, FL 34667;

    h. The real property located at 17910 Oggie Lane, Hudson, FL 34667;

    i. The real property located at 17924 Oggie Lane, Hudson, FL 34667;

    j. The real property located at 17942 Oggie Lane, Hudson, FL 34667; and

    k. The real property located at 18002 Oggie Lane, Hudson, FL 34667.

4. If any of the property described above, as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been co-mingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL,

_____
FOREPERSON

MARIA CHAPA LOPEZ
United States Attorney

JOSEPH S. BEEMSTERBOER
Deputy Chief
United States Department of Justice
Criminal Division, Fraud Section

By: _____
Jay G. Trezevant
Assistant United States Attorney
Chief, Economic Crimes Section
United States Attorney's Office
Middle District of Florida

By: _____
Jacob Foster
Acting Assistant Chief
Catherine Wagner
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section

13

FORM OBD-34
April 19                          No.

# UNITED STATES DISTRICT COURT
## Middle District of Florida
### Tampa Division

### THE UNITED STATES OF AMERICA

vs.

### WILLIE MCNEAL IV

## INDICTMENT

Violations:   18 U.S.C. § 371
18 U.S.C. § 1320A-7b(b)(1)(B)

A true bill,

_____
Foreperson

Filed in open court this <u>third</u> day of April 2019

_____
Clerk

Bail $_____

[FILED stamp: 2019 APR -3 PM 12:32 CLERK US DISTRICT COURT MIDDLE DISTRICT OF FLORIDA TAMPA FLORIDA]

GPO 863 525